UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JOHN HENRY RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:06-CV-153-TS |
| | ) | |
| KEVIN PAULEY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

The pro se Plaintiff, John Henry Ray, alleges that Deputy Kevin Pauley of the Grant County Sheriff's Office did not have a lawful reason to stop, detain, or arrest him in the early morning hours of July 11, 2004. After the Court dismissed claims pursuant to the Prison Litigation Reform Act's mandatory screening process, the only claim remaining was that the Plaintiff's Fourth Amendment rights were violated when Deputy Pauley detained him for ten to fifteen minutes during an investigatory stop. On March 15, 2007, the Defendant moved for summary judgment on this claim. The motion has been fully briefed and is ripe for ruling.

**BACKGROUND**

On April 14, 2006, the pro se Plaintiff filed a Prisoner Complaint under 42 U.S.C. § 1983 against Deputies Kevin Pauley and Todd Fleece of the Grant County Sheriff's Department. The Plaintiff alleges that the Defendants "did not have reasonable suspicion to do an investigatory stop" and that they "made an illegal arrest" because they did not have "sufficient probable cause." (DE 1 at 4.) In response to the Court's order to provide more detail about the state court criminal proceedings that arose out of the challenged arrest, the Plaintiff stated that he told the

Defendants, when they asked for his identification, that he had initially given them a false name because his parole officer in Kansas did not know that he was in Indiana. Shortly after providing this information to the Defendants, Deputy Fleece found a gun in the nearby woods that the Defendant believed the Plaintiff possessed and then discarded.

The Court granted the Plaintiff leave to proceed in forma pauperis, but limited the Plaintiff's claim to the "ten to fifteen minutes" that he was detained "while the officers searched the vicinity of the accident." (DE 11 at 2.) This claim was limited to Defendant Pauley; Defendant Fleece was dismissed from the suit. The Court also dismissed the Plaintiff's claim that he was arrested without probable cause because the facts admitted by the Plaintiff established the necessary probable cause to arrest him. Citing the applicable immunity doctrines, the Court dismissed claims arising out of the Plaintiff's allegation that the police gave false statements during his trial and that the prosecutor committed perjury and falsified evidence during cross-examination.

On October 30, 2006, Defendant Pauley filed his Answer and Affirmative Defenses. On March 15, 2007, the Defendant moved for summary judgment and provided notice to the Plaintiff of his obligation to respond to the motion. On April 9, 2007, the Plaintiff responded and on April 19, the Defendant replied.

## STATEMENT OF FACTS

In the early morning hours of July 11, 2004, the Defendant, a Grant County Sheriff Deputy with twenty-three years of experience, was parked at an intersection on State Road 9 in the northeast area of the City of Marion, Indiana. State Road 9 is a two-lane state road with a 55-

mile-per-hour posted speed limit. The Defendant parked so that he was able to observing traffic on State Road 9 from relative seclusion. Before his patrol, he had been advised that six mailboxes in the area had been vandalized the previous six nights. The Sheriff's Department believed that juveniles committed the vandalism, possibly using off-road vehicles. In addition, State Road 9 directly northeast of Marion is usually patrolled because a convenience store just north of the city is a popular target for robberies.

At about 1:05 a.m., the Defendant saw what looked like a motorcycle pull out on State Road 9 from a side road and head south toward his location and the City. As he got a better look, the Defendant saw that it was a motorized scooter with two riders. The scooter passed his location going twenty-five miles per hour. The Defendant noticed that the riders were wearing black or very dark clothing. The Defendant states in his Affidavit that he thought it was unusual for a moped to be out at that hour of night and that their speed and dark clothing caused safety issues. This, he claims, combined with the Department's notice to be on the lookout for vandalism and the proximity of the convenience store, caused him to follow the scooter. The Plaintiff points out in his Response that the Defendant's deposition testimony is that he saw that they were wearing dark clothing after he started following them. (Pauley Dep. at 6.)[1]

The Defendant followed the scooter on State Road 9 for about two-thirds of a mile. It then turned right on East Indiana Hills Road. The Defendant knew Indian Hills Road to be a residential road with no outlet. At the end of the road was a field containing a radio station tower that is blocked by a locked gate and a sign that warns people that it is a high voltage area. The

---

[1] While this issue appears to be in dispute, it is not material because it is not controverted that the Defendants were wearing dark clothing and that the Defendant observed this before he actually made any contact with, or seized, the Plaintiff.

Defendant states in his Affidavit, "[t]he fact that the motor scooter turned right along this road at that hour was thus additionally suspicious." (Pauley Aff. ¶ 16.) He states in his deposition that he wanted to see where they were going. (Pauley Dep. at 6.) The Defendant continued to follow the scooter down Indian Hills Road.

Upon driving past the last residence and getting to the end of the block and the warning sign, the driver veered into a grassy area that leads to dense woods. The Defendant saw the passenger on the back of the motor scooter jump off and run to the south end of the woods. The Defendant knew that about 100 yards into the woods was a creek wide enough to prevent further passage.

The Defendant got out of his patrol truck and approached the driver, who had stayed with the scooter and was attempting to pull it back on the road. The Defendant learned that the driver's name was Otis Donald. When the Defendant asked Donald who his friend was, he identified him as Steve ands said that he "just took off." (Pauley Aff. ¶ 24.) The Defendant placed Donald in handcuffs and patted down his clothing. When the Defendant felt the outline of a weapon, he asked Donald what was in his pocket. Donald told the Defendant that it was a BB gun. The Defendant retrieved the BB gun, which looked like an ordinary handgun. He also discovered an electrical Taser in Donald's pocket.

While waiting for backup to arrive, the Defendant put Donald in his patrol truck and walked into the grassy area where he saw the passenger disappear. At the edge of the woods he saw a man, the Plaintiff, laying down on his side. The Defendant believed that he was trying to hide. The Defendant ordered the Plaintiff out of the woods at gun point, handcuffed him, and laid

him on the ground in front of his truck. The Defendant asked the Plaintiff his name and he responded that he was Felton McCray, which the Defendant noted did not match the name that Donald told him. The Defendant also noticed a black plastic bag on the ground where the Plaintiff had been laying. In his Affidavit, the Defendant states that the circumstances to that point led him to suspect that the men were out late at night on the scooter, wearing dark clothing and carrying weapons and an empty bag, because they were going to commit a burglary.

Deputies Todd Fleece and Mike Jacobs arrived and the Plaintiff was placed in Deputy Fleece's car. The Plaintiff then told Deputy Jacobs that his real name was John Henry Ray and that he was on parole in Kansas. When questioned what they were doing out at that hour, Donald stated that they had just left a party and were going home and the Plaintiff stated that they were just out riding the scooter. During this time, deputies were also searching the area near the scooter and where the Plaintiff was laying on the ground for additional evidence that the two men had been, or were planning to be, engaged in criminal activity.

Ten to fifteen minutes after the Plaintiff was detained, Deputy Fleece found a black stocking cap and 9 mm Taurus semi-automatic pistol in the weeds. The gun was loaded with fifteen rounds of jacketed hollow point ammunition. The Plaintiff and his companion were then transported to the jail to be interviewed.

## DISCUSSION

**A.      Summary Judgment Standard**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc*., 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp*., 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing

the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

**B.     Fourth Amendment Seizure**

In *Terry v. Ohio*, 392 U.S. 1, 30 (1968), the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Police officers must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21. Although reasonable suspicion requires more than a mere "hunch," it is a measure of suspicion less demanding than that required for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "[I]t is a commonsense, nontechnical concept that deals with the factual and practical considerations of 'everyday life on which reasonable and prudent [people], not legal technicians, act.'" *United States v. Lawshea*, 461 F.3d 857, 859 (7th Cir. 2006) (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)).

7

Once detained, an officer may ask a moderate number of questions to determine the detainees identity and to try to obtain information confirming or dispelling the officer's suspicions. *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Where the scope of the detention is carefully tailored to its underlying justification, there is no Fourth Amendment violation. *United States v. Scheets*, 188 F.3d 829, 838 (7th Cir. 1999). If a *Terry* stop continues too long or becomes unreasonably intrusive, it ripens into a de facto arrest that must be based on probable cause. *United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994).

Because not all encounters between the police and citizens implicate the Fourth Amendment's prohibition against unreasonable searches and seizures, *Scheets*, 188 F.3d at 836, the Court must first clarify which of the Defendant's actions implicated the Plaintiff's rights. Before Deputy Pauley stopped his truck behind the moped, got out, approached the Plaintiff, ordered him to come out of the weeds, and handcuffed him, his freedom of movement was not restricted and he was not seized for purposes of the Fourth Amendment. *Scheets*, 188 F.3d at 836 (stating that if reasonable person would feel free to disregard police and go about their business, the encounter is consensual and no degree of suspicion is required); *United States v. Jerez*, 108 F.3d 684, 689 (7th Cir. 1997) (noting that seizure of citizen approached in a public place occurs only if a reasonable person in similar circumstances would not have felt free to leave) (citing *Michigan v. Chesternut*, 486 U.S. 657, 573 (1988). The Defendant, although following the scooter in his patrol truck, did not make any show of authority that restricted the driver's movement. He did not activate his lights or his sirens or otherwise indicate he wanted the scooter to stop. The Defendant, in fact, continued on his way down State Route 9 and turned on Indian Hills Road, not stopping until the scooter veered off the road. Therefore, even if merely

following the scooter was a show of authority, there was no seizure because the Defendant did not yield to that authority. *See McCoy v. Harrison*, 341 F.3d 600, 605 (7th Cir. 2003) (noting that seizure does not occur until a person yields to a show of authority or force). Thus, the Defendant did not need articulable suspicion to follow the moped.

When the scooter stopped on its own, by running off the road into the weeds, the Defendant parked his patrol truck and got out. The Defendant does not dispute that he seized the Plaintiff when he discovered him laying in the grass by ordering him at gun point to come out and placing him in handcuffs. After he was detained for ten to fifteen minutes, officers found a gun in relatively close vicinity to the spot he had appeared to be hiding. The Plaintiff was known to be on probation and neither party discusses the existence of any permit. Because probable cause existed to believe that the Plaintiff had committed a crime by possessing the firearm, there was no Fourth Amendment violation in taking him to the jail to be interviewed.[2] Therefore, the only conduct that could have infringed on the Plaintiff's constitutional rights occurred between the initial seizure and his transport to the jail.

---

[2] Because probable cause existed, it is not important to distinguish whether the Defendant actually placed the Plaintiff under arrest before he was transported to the jail or whether he was subject to a de facto arrest by virtue of the scope and duration of the seizure. *See United States v. Sharpe*, 470 U.S. 675, 685 (1985) (stating that if investigatory stop continues too long or becomes unreasonably intrusive, it ripens into a de facto arrest that must be based on probable cause). It is also not important, as the Plaintiff mistakenly argues, whether they had probable cause to arrest him for the crime he was ultimately charge with—Unlawful Possession of a Firearm by a Serious Violent Felon. As long as the facts and circumstances within the officers' knowledge were sufficient to warrant a prudent officer to believe that the Plaintiff had committed any offense, their actions did not violate the constitution. *See Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994) (finding in a § 1983 false arrest claim, that "[a]t the time of the arrest police officers need probable cause that *a* crime has been committed, not that the criminal defendant committed all of the crimes for which he or she is later charged").

**1.**     *Specific and Articulable Facts Justifying the Initial Seizure*

The Plaintiff contends that Deputy Pauley did not have reasonable suspicion of criminal activity when he first encountered him. Deputy Pauley identifies several factors that, under the totality of circumstances, led him to be suspicious of the Plaintiff's activity before he seized him; the Plaintiff was riding on a moped at 1:00 a.m. in an area that had just experienced a string of nighttime vandalisms; he was heading in the direction of a convenience store that had been burglarized several times; he and the other rider were wearing very dark clothing; the scooter turned down a residential dead-end road; the scooter veered off the road; and the Plaintiff immediately left the scooter and headed into a wooded area, in apparent flight. The Defendant's suspicions were further increased when Donald explained that the Plaintiff just took off and when he recovered a BB gun that looked like a regular, more dangerous, firearm and a Taser that had been concealed in Donald's pocket.

It was reasonable for the Defendant to attach suspicion to the Plaintiff's actions and to infer that he may have been out with his friend late at night planning to commit a burglary. Circumstances that appear innocent to an outside observer, such as wearing dark clothing late at night, may suggest criminal activity to experienced law enforcement personnel, and officers may assess circumstances in light of their experience. *United States v. Cordell*, 723 F.2d 1283, 1285 (7th Cir. 1983). In addition, "certain behavior in isolation may have an innocent explanation yet that same behavior may give rise to reasonable suspicion when viewed in the context of other factors at play." *Lawshea*, 461 F.3d at 859. Even if the act of turning down a dead end road with no business establishments, viewed in context of the dark clothing and the late hour, was not sufficient to give rise to reasonable suspicion that criminal activity was afoot, the Defendant

10

knew that the scooter would have no reason to go down that road unless the riders were going to one of the houses. Therefore, when the scooter passed the last residence, the circumstances became decidedly more suspicious—particularly as the scooter veered off the road and the Plaintiff disappeared into the woods. It was reasonable for the Defendant to conclude that the Plaintiff was trying to evade him and that the reasons for his furtive actions were not innocent, or were, at the very least ambiguous enough to require further investigation in light of the other suspicious circumstances.

By the time the Defendant began looking for the Plaintiff, and found him lying on the ground as if he was hiding, he had recovered concealed weapons from Donald. The Plaintiff has not put facts into the record to dispute this and it is, therefore, admitted to exist without controversy. Instead, the Plaintiff argues that he had a constitutional right to go where he wanted to. Although a citizen has the right to go about his business when approached by an officer without reasonable suspicion or probable cause, *Florida v. Royer*, 460 U.S. 491, 498 (1983), the Supreme Court's jurisprudence also provides that "unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not 'going about one's business'; in fact, it is just the opposite," *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). Therefore, allowing an officer to stop a fleeing individual and investigate further is "quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning." *Id.*; *see also Lawshea*, 461 F.3d at 860 (noting that "[s]ince *Wardlow*, we have made it clear that when a suspect attempts to flee from the police, the officers have reasonable suspicion to pursue the suspect in order to conduct a *Terry* stop") (citing *United States v. Breland*, 356 F.3d 787, 791 (7th Cir. 2004)). It was reasonable for the Defendant to characterize the Plaintiff's actions as

11

evasive and to attach suspicion to them.

**2.     *Scope and Duration of the Detention***

The Plaintiff contends that the Defendant's actions exceeded the scope of an investigative stop. He argues that the Defendant did not have any reason to believe that he was armed or that he was engaged in the behavior for which he was ultimately charged, Unlawful Possession of a Firearm by a Serious Violent Felon. The Court, again, notes that only the manner of detention before the gun was located is at issue. Once the gun was discovered, the Defendant had probable cause to believe that the Plaintiff had committed a gun violation, or, taken in conjunction with his admission regarding probation, a probation violation.

A court must "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." *United States v. Sharpe*, 470 U.S. 675, 686 (1985)). In *Sharpe*, the Supreme Court advised that a reviewing court should not "indulge in unrealistic second guessing" about the methods law enforcement uses to conduct their investigations. 470 U.S. at 687. "The question is not whether some . . . alternative [means] was available, but whether the police acted unreasonably in failing to recognize or pursue it." *Id.*

The Court finds that the detention was properly limited in scope and duration. It was not unreasonable, given the articulable reasons for his suspicions, for the Defendant to question the Plaintiff about his identity and what he was doing out at 1:00 in the morning. In addition, the discovery of weapons on Donald, the late hour, and the secluded area, provided justification for the Defendant, the lone officer on the scene, to order the Plaintiff out of hiding at gun point and

12

to handcuff him. "Expansions of *Terry* have led to the permitting of the use of handcuffs, the showing of weapons and other measures of force more traditionally associated with arrest than investigatory detention. *United States v. Vega*, 72 F.3d 507, 515 (7th Cir. 1995) (citing *United States v. Tilmon*, 19 F.3d 1221, 1224–25 (7th Cir. 1994)). Stops that are "too intrusive to be justified by suspicion under *Terry,* but short of custodial arrest, are reasonable when the degree of suspicion is adequate in light of the degree and the duration of the restraint." *Id.* (quoting *United States v. James*, 40 F.3d 850, 875 (7th Cir. 1994), *cert denied*, 513 U.S. 1132 (1995)). "Officers faced with a 'fluid situation . . . are permitted to graduate their responses to the demands of the particular circumstances confronting them.'" *Tilmon*, 19 F.3d at 1226 (quoting *United States v. Weaver*, 8 F.3d 1240, 1243 (7th Cir.1993)). The Plaintiff's detention was properly limited in scope.

The Plaintiff's ten to fifteen minute detention was also properly limited in duration. *See, e.g., United States v. Robinson*, 30 F.3d 774, 784 (7th Cir. 1994) (holding that twenty-minute detention to question two suspects was not unreasonable under *Terry*); *United States v. Chaidez,* 919 F.2d 1193, 1198 (7th Cir.1990) (finding that ten to fifteen minute detention was reasonable); *Pliska v. City of Stevens Point*, 823 F.2d 1168, 1178 (7th Cir. 1987) (stating it was reasonable to detain person in squad car for ten minutes to determine his identity and verify or dispel officer's suspicion that he was planning a burglary). The deputies used that time to question both the Plaintiff and Donald about their identity and activities and to search the area where the Plaintiff was found hiding. Based on the information the Defendant possessed, he had specific reasons to believe that the Plaintiff was planning to commit a robbery. These suspicions were not dispelled in the ten to fifteen minutes that the Plaintiff was detained before the gun was found and the

13

Defendant did not act unreasonably in failing to recognize an alternative method to confirm or dispel his suspicions.

The undisputed facts do not establish a violation of the Plaintiff's Fourth Amendment rights. The Plaintiff has not presented any genuine issues for trial and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION AND ORDER

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 34] is GRANTED. The Clerk will enter judgment in favor of the Defendant and against the Plaintiff.

SO ORDERED on May 14, 2007.

                                          s/ Theresa L. Springmann
                                          THERESA L. SPRINGMANN
                                          UNITED STATES DISTRICT COURT
                                          FORT WAYNE DIVISION